**ABRAMS FENSTERMAN,** *ET AL.*
Deborah J. Piazza, Esq.
Danielle Elias, Esq.
630 Third Avenue, 5th Floor
New York, NY 10017
Tel: (212) 279-9200
Fax: (212) 279-0600
dpiazza@abramslaw.com
delias@abramslaw.com

*Proposed Counsel for Debtors and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
|  | : | Case No. 11-47056 (ESS) |
| PENINSULA HOSPITAL CENTER, | : |  |
|  | : |  |
| Debtor. | : | Joint Administration Pending |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DECLARATION OF TODD MILLER PURSUANT TO LOCAL BANKRUPTCY RULE 1007-4 AND IN SUPPORT OF FIRST DAY MOTIONS AND APPLICATIONS

TODD MILLER declares as follows:

1.  I am the Chief Restructuring Officer of Peninsula Hospital Center ("**PHC**") and have served in this position since September 1, 2011. I am familiar with the business and affairs of PHC and Peninsula General Nursing Home Corp. d/b/a Peninsula Center For Extended Care & Rehabilitation ("**PGN**") (each a "**Debtor**" and collectively, with PHC, the "**Debtors**"), as Chapter 11 debtors and debtors in possession.

2.  I submit this declaration (this "**Declaration**") pursuant to Rule 1007-4 of the Local Bankruptcy Rules for the Eastern District of New York (the "**Local Bankruptcy Rules**") to support the Debtors' petitions for relief under Chapter 11 of title 11 of the United States Code

(the "**Bankruptcy Code**") filed today (the "**Petition Date**") in these Chapter 11 cases ("**Chapter 11 Cases**") and the relief, in the form of motions and applications, that the Debtors' have simultaneously requested of the Court (the "**First Day Motions and Applications**").

3.     In order to enable the Debtors to minimize the adverse effects of the commencement of the Chapter 11 Cases on their businesses, the Debtors have requested various types of relief in the First Day Motions and Applications.  The First Day Motions and Applications seek relief aimed at, among other things, maintaining vendor and supplier confidence, patient confidence and employee morale, as well as use of the Debtors' cash resources and an efficient commencement of these bankruptcy cases. All of the First Day Motions and Applications are crucial to the Debtors' efforts to maintain the value of their estates for the benefit of their creditors during the course of these chapter 11 cases.

4.     An involuntary chapter 11 petition against PHC was filed on August 16, 2011. PHC's Consent To Order For Relief and a voluntary chapter 11 petition for PGN were filed today. The Debtors have filed a motion for entry of an order directing joint administration of the Debtors' chapter 11 cases, for procedural purposes only.

5.     Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, upon information supplied to me by other members of the Debtors' management or professionals, upon information learned from my review of relevant documents, or upon my opinion based upon my experience and knowledge of the Debtors' operations and financial conditions. If called as a witness, I would testify to the facts set forth in this Declaration. Unless otherwise indicated, all financial information contained herein is

presented on an unaudited basis. I am authorized to submit this Declaration.

## INTRODUCTION & BACKGROUND

6.      PHC was founded in 1908 and is one of two hospitals located on the Rockaways Peninsula. It has been in existence for over 100 years and has been critical in providing healthcare services throughout the community and its surrounding neighborhoods throughout that time.

7.      PHC and PGN are New York 501(c)(3) not-for-profit corporations.

8.      The Debtors are regulated by the New York State Department of Health (the "DOH"). As regulated health care facilities, the Debtors have a duty of care to their patients to provide high quality medical treatment and other services, as well as to maintain a safe and healthy environment for their patients.

9.      Most of the Debtors' income is from Medicare, Medicaid and various third-party insurance programs.

10.      The Debtors maintain voluminous books and records and complex accounting systems. Given the complexity of their business operations, the Debtors have not finished compiling the information required to complete the Schedules and Statements.

11.      As of the Petition Date, PHC operates a 173-bed acute care community teaching hospital campus with resident training programs in orthopedics, general surgery, family practice, dentistry and podiatry. The Hospital Center provides a full continuum of care including acute, rehabilitative, outpatient, diagnostic, primary care and wellness to the communities of the Rockaways, the Five Towns of Nassau County and parts of Queens and Brooklyn. PHC

provides a wide range of services which include: Traumatic Brain Injury Unit, Angels on the Bay Pediatric Unit, Family Health Center, Diabetes (Adult and Pediatric) Treatment Centers, Advanced Imaging Services (including MRI/MRA, 16-slice CT, Mammography Unit, Nuclear Medicine, Radiation Oncology service with linear accelerator, Podiatry, Dental, Orthopedics and Eye Care Center on site. Additionally, PHC operates a 14-bed private room Inpatient Hospice Care Center – Butterflies by the Sea – the Eisenstadt Hospice Center at Peninsula. PHC also serves as the hospital affiliate for the Joseph P. Addabbo Family Health Center, and are a Federally Qualified Health Center with the New York State Department of Health *Stroke Center* designation.

12. PGN is a skilled nursing facility encompassing a 200-bed long-term care and rehabilitation center (Peninsula Center for Extended Care and Rehabilitation). PGN specializes in short term rehabilitation respiratory care, including: ventilators, a dementia special care unit , wound care, total Parental nutrition, hospice care, long-term care and traumatic brain injury care. PGN also has an adult-day healthcare program, which is a medical model operating 7 days per week. In addition, PGN does intravenous therapy, tracheostomy care and rehabilitative nursing. PGN maintains onsite physical therapy, occupational therapy, speech therapy, audiology, physiatry psychology and therapeutic recreation. PHC and PGN are committed to a mission of providing "Quality Health Care—Close to Home."

13. PGN employs two doctors, two administrators and thirty six (36) registered nurses. Two hundred and seven (207) other employees of PGN exist as well.

14. PHC employs one hundred and thirty four (134) doctors, four (4) administrators and five hundred fifty one (551) other employees.

15. The Debtors derive mutual benefit from their relationship with each other

and being located on adjoining properties. They share over-head costs, nursing staff and benefit from cross-referrals. The value of each entity is substantially increased by the continued operations of the other.

### The Debtors' Not-For-Profit Status

16. The Debtors are both New York 501(c)(3) not-for-profit corporations. As such, there are no equity holders in the corporations. They each have separate boards of directors however all of the board members of PGN serve on PCH's board as well (collectively, the "Boards").

17. Board meetings for the Debtors are held consecutively and thus there are separate presentations from management relating to the distinct financial, operational and other issues that affect the separate entities. The board minutes also reflect the distinct actions taken with respect to each entity.

18. As not-for-profit facilities, the Debtors are exempt from federal and state income taxes and local real estate taxes.

### Factors Leading to the Commencement of the Debtors' Chapter 11 Cases

19. Like most not-for-profit hospitals and nursing homes operating in New York, the Debtors have been struggling financially in recent years, as operating costs have risen and reimbursement for services has failed to keep pace.

20. On February 23, 2009, Medisys Health Network Inc., ("**Medisys**") took control over the boards of both entities. They also assumed responsibility over the operations of the Debtors' essential services; including billing and cash management. Because of the series of government cuts in reimbursement rates for services rendered by the Debtors for their patients, the Debtors began defaulting on certain obligations. The DOH, concerned about the

Debtors' financial viability and their ability to provide proper care for their patients started setting deadlines for corrective measures to be taken if the Debtors wanted to avoid a directive to close.

21.     An involuntary petition was filed against PHC on August 16, 2011. Medisys notified the Debtors that as of August 22, 2011 it was severing its relationship with the Debtors and terminating any administrative and other shared services. Medisys made a demand for payment of past due amounts owed to Medisys and its affiliates estimated at $6 million. Faced with Medisys' abrupt withdrawal and the imminent closure of the facilities, the Debtors' directors solicited proposals, interviewed and negotiated with several groups as to funding and running the Debtors' operations. Proposals were received from at least four different groups. After an intense period of due diligence and negotiations, the Boards concluded that a proposal by an affiliate of the Revival Home Health Care entities, a privately owned health care group having an established reputation with the DOH, was most likely to succeed in fulfilling the Boards' paramount goal of keeping PHC operating and providing services to the Rockaway Peninsula community.

22.     As part of the Boards' agreement with Revival, I was hired to reorganize the Debtors' operations and bring order to its record-keeping. At the time I started, there were only 8 patients being attended at PHC, the hospice center had closed and the DOH had issued orders of diversion preventing ambulances from bringing any new patients to PHC.  Because of Medisys' abrupt resignation, billing had ceased and the financial and reporting controls had been in disarray.

23.     In the two weeks since I was hired, the DOH has rescinded its orders

diverting patients away from PHC. The hospice center has been re-opened, and the patient

census at PHC was 60 as of September 13, 2011. Financial and cash management controls are

being re-established. DOH on-site monitoring has continued and the DOH receives a daily

report from management.

## ASSETS

24.     The Debtors principal assets are the two separately owned parcels of land

adjoining each other on 50-15 and 51-15 Beach Channel Drive, Far Rockaway, New York and

their receivables – principally due from governmental agencies. With respect to PHC, it is

believed that the mortgages, liens and secured claims exceed the value of these assets; that is not

believed to be true as to PGN. The benefit funds attached to the Union are believed to be the

largest secured creditor of each of PHC and PGN. As of May 31, 2011, the adjusted assets for

both Debtors are $34,576,624 and the adjusted liabilities are $70,804,654.

## CORPORATE STRUCTURE

25.     As stated above, because the Debtors are both not-for-profit corporations,

there are no equity holders in the corporations. Decisions are made by the Boards, the

Executive Committee and management.

## CHAPTER 11 OPERATIONS

26.     During these chapters 11 cases the Debtors will not change their non-

profit status. The Debtors expect to bring their operations to break-even or profitable levels

through a change in culture, marketing strategies and by feeding off synergies with Revival's

related businesses. Revival has arranged for an $8 million line of credit to facilitate the Debtors'

operations during these chapter 11 cases. Cost reduction measures, monitoring receivables,

27.     The Debtors believe that with new a new management team and fresh capital they can increase revenue by attracting more patients to the hospital than they have previously. Currently, 80% of the population on the Rockaway peninsula accesses health care off the peninsula; the hospital is used by them primarily for its emergency services. The Debtors plan to offer a wider range of services to attract the local community. The Debtors expect to offer cardiac services, increase surgery capabilities and offer improved oncology services (among others).

28.     The assessment of new management is that neither the hospital nor the nursing home were aggressively managed in recent years and that implementation of new procedures will result in significant savings as well as increased revenues. For example, PHC is recruiting a new case manager because the average length of stay of its patients is above average. Longer stays are detrimental to the patients as well as PHC's revenues. Aside from managing care better, PHC's staff is also building new relationships with home care agencies and nursing homes to more quickly obtain placement for its patients.

29.     Previous purchasing and maintenance procedures have also been identified as inefficient; the Debtors believe that properly managing these procedures and vendor relationships will generate significant savings.

## PART II

## FIRST DAY MOTIONS AND APPLICATIONS

29.     Concurrent with the filing of their Chapter 11 cases, the Debtors filed the First Day Motions and Applications in order to minimize the adverse effects of the

commencement of the Debtors' bankruptcy cases on their business and the reorganization process. I believe that the success of these Chapter 11 Cases hinges on the Debtors obtaining approval of the First Day Motions and Applications. I have reviewed the factual background in support of each First Day Motion and Application and certify that the facts contained therein are true and correct to the best of my information, knowledge and belief.

## LOCAL BANKRUPTCY RULE 1007-4 SCHEDULES

30.     Attached hereto and incorporated herein by reference are various schedules setting forth information required pursuant to Local Bankruptcy Rule 1007-4. Capitalized terms used in the attached schedules that are not otherwise defined therein shall have the meanings ascribed to them in preceding paragraphs of this Declaration.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on this 19th day of September, 2011
Far Rockaway, New York

/s/ Todd Miller
Todd Miller
Chief Restructuring Officer
Peninsula Hospital Center