**PENINSULA HOSPITAL CENTER**
**PENINSULA CENTER FOR EXTENDED CARE AND REHABILITATION**
**51-15 Beach Channel Drive**
**Far Rockaway, NY 11691**

September 1, 2011

Dear Sir/Madam:

This Agreement (this "Agreement") sets forth the understanding between Peninsula Hospital Center (the "Hospital") and Peninsula Center for Extended Care and Rehabilitation (the "Nursing Home" and, together with the Hospital, "Peninsula") and the undersigned Revival Acquisition Group, LLC, ("Revival") with respect to Revival's investment in Peninsula, on the terms set forth below.

1.     <u>Chapter 11 Bankruptcy</u>.

    a.   The current board of directors of each of the Hospital and the Nursing Home (collectively, the "Board") hereby authorizes the filing of a voluntary petition for bankruptcy under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Filing") for the reorganization of its debts and authorizes the Chief Restructuring Officer (defined below) to execute any and all documents necessary to effectuate the Bankruptcy Filing and the terms of this Agreement.

    b.   On the day of the Bankruptcy Filing, Peninsula shall petition the bankruptcy court (the "Bankruptcy Court") having jurisdiction over the bankruptcy proceeding for entry of an order, substantially in the form annexed hereto as <u>Exhibit A</u>, seeking the approval of the debtor-in-possession financing (the "DIP Financing") to be provided by Revival pursuant to Section 2 of this Agreement and for approval of this Agreement. Revival shall have no further obligations under this Agreement if the Bankruptcy Court fails to enter an order approving this Agreement within 30 days of the date of the petition; <u>provided, however</u>, such 30-day time frame may be extended at the option of Revival.

    c.   The Board shall engage the law firm of Abrams Fensterman et. al. ("Abrams") and the restructuring and accounting firm of Alvarez & Marsal ("Alvarez") to represent Peninsula in connection with the Bankruptcy Filing and guidance through all procedures in connection therewith up to and including confirmation by the Bankruptcy Court. Notwithstanding anything herein to the contrary, Revival shall cause the New Directors (as defined below) to continue to retain Abrams and Alvarez for the purposes set forth in this paragraph (c) following the board transfer, as contemplated in Section 3 of this Agreement.

d. On the date of this Agreement, Revival agrees to pay: (i) to Abrams, an aggregate amount equal to $140,000, which consists of $15,000 of legal expenses incurred by Peninsula as a result of Abrams' representation of Peninsula in connection with this Agreement, and $125,000, which represents the initial retainer to be paid to Abrams for its representation of Peninsula in connection with the transactions contemplated by this Agreement, and (ii) to Alvarez, an amount of $125,000, which represents the initial retainer to be paid to Alvarez for its representation of Peninsula in connection with the transactions contemplated by this Agreement. Notwithstanding anything herein to the contrary, such payment of costs and expenses pursuant to this paragraph (d) shall be separate and apart from the agreement to provide DIP Financing pursuant to Section 2 of this Agreement.

2.    Revival Financing.

a. Immediately following the execution of this Agreement, but in no event later than the day following the date hereof, Revival shall deliver $250,000 in immediately available funds to Peninsula (the "Initial Commitment"), which amount shall be secured by a security interest in all assets of the Nursing Home, on such terms and conditions set forth in the Loan Agreement and Promissory Note and the Security Agreement, substantially in the forms annexed hereto as <u>Exhibit B</u>. Revival shall also cause to be provided an $8.0 million line of credit (the "Line of Credit"), to Peninsula on such terms and conditions set forth in the Post-Petition Credit and Security Agreement, substantially in the form annexed hereto as <u>Exhibit C</u> (the "Financing Agreement"), the terms and conditions of which are hereby approved by the Board.

b. Among other things, the Financing Agreement provides as follows:

i. Except for the Initial Commitment, no advances shall be made pursuant to the Line of Credit unless and until Peninsula receives a court order in form and substance reasonable acceptable to Revival granting Revival a super priority priming lien on all of Peninsula's assets.

ii. The Line of Credit shall be used for the purposes of financing Peninsula's operations, including, without limitation, payroll expenses, outstanding post petition creditor obligations and the day-to-day operations of Peninsula.

iii. The Initial Commitment and any advances pursuant to the Line of Credit shall accrue interest at a rate of six percent (6.0%) per annum, and shall be due and payable by Peninsula at the earlier of: (1) 30 days from the date of this Agreement if the Bankruptcy Court fails to enter an order approving this, (2) two (2) years from the date of this Agreement, (3) upon the appointment of a trustee, receiver or any court appointed person or entity which shall divest either the New Directors or the Restructuring Agents of control over the operations and/or finances of Peninsula, or (4) the approval by the Bankruptcy Court of a plan of reorganization not proposed by Revival.

c. Including amounts drawn down on the Line of Credit, Revival shall provide Peninsula, to the extent necessary, a total of $27.0 million in cash and/or assumption of obligations, to be used in the sole discretion of the New Directors for the sole purpose of funding a plan of reorganization which effects a discharge of all of the outstanding obligations of Peninsula.

3. Board Transfer.

a. Contemporaneous with the execution of this Agreement, Peninsula shall provide Revival with an affidavit of the Chairman of the Board of Directors of each of the Hospital and the Nursing Home, in a form and substance satisfactory to Revival, attesting, inter alia, to the identity of all the members of the Board of Directors of both the Nursing Home and the Hospital.

b. Contemporaneous with the execution of this Agreement, each member of the Board of Directors of Peninsula shall execute a letter in the form of Exhibit D annexed (collectively the "Letters"). The Letters shall be delivered by Peninsula in escrow to counsel to Revival and released to Revival only upon the entry of a Bankruptcy Court order approving this Agreement. Revival may elect to terminate this Agreement by delivering a letter to that effect to Abrams (i) in the event Peninsula shall not have delivered to counsel to Revival all of the Letters with respect to the Nursing Home Board by September 2, 2011 or (ii) in the event Peninsula shall not have delivered to counsel to Revival thirteen of the Letters with respect to the Hospital Board by September 2, 2011 at 5 p.m., or (iii) in the event Peninsula shall not have delivered to counsel to Revival all of the Letters, other than that of Martin Oliner, with respect to the Hospital Board By 5 p.m. September 9, 2011.

c. Notwithstanding the foregoing, the New Directors shall grant an observer right to three (3) members of the Board for each of the Hospital and the Nursing Home (the "Observer Directors"), who shall be entitled to notice of each annual, special or other meeting of the board of directors of each of the Hospital and the Nursing Home and shall be entitled to attend each such meeting; provided, however, the Observer Directors shall not have a right to vote at such meetings. The Observer Directors shall be determined by the sole discretion of the Board.

4. Chief Restructuring Officer. The Board hereby appoints Todd Miller as Peninsula's Chief Restructuring Officer (the "Chief Restructuring Officer") with compensation of $30,000 per month and grants the Chief Restructuring Officer (i) the power to hire and fire any officer or employee of the Hospital and Nursing Home and (ii) the authority and powers generally associated with such position.

5. <u>Access to Books and Records</u>. Following the execution of this Agreement, Peninsula shall afford the Restructuring Agent, Revival and its accountants, counsel and other representatives reasonable access to (i) all of the properties, books, contracts and records of the Hospital and the Nursing Home, and (ii) all other information concerning the business, properties and personnel (subject to restrictions imposed by applicable law) of the Hospital and the Nursing Home as Revival may reasonably request. Such access shall include full co-operation in obtaining information generated or maintained by Medisys.

6. <u>Public Disclosure</u>. Following the execution hereof, the parties hereto shall cooperate to issue a joint press release regarding the transactions contemplated hereby. Prior to and subject to the foregoing, no party to this Agreement shall issue any statement or communication to any third party regarding the subject matter of this Agreement or the transactions contemplated hereby without the consent of the other party, except as may be required by applicable law, rule or regulation. Notwithstanding the foregoing, this Agreement may be forwarded to the DOH (as defined below) as requested.

7. <u>Additional Agreements</u>.

a. Conditioned on the Bankruptcy Court's approval of the Line of Credit and of its plan of reorganization, Revival shall cause Peninsula or its successor to continue to operate as a skilled nursing facility and a hospital, subject to Department of Health or other necessary regulatory (collectively, "DOH") approvals, at their current locations, and shall not enter into a contract or other agreement with a third party providing for the sale, disposition or other termination of the Nursing Home's or the Hospital's operations for at least three (3) years following the date of this Agreement. Notwithstanding the foregoing, failure to obtain DOH approval shall not be as a result of any act or failure to act by Revival, its officers, directors, managers or employees, or the New Directors, provided that this provision shall not be construed as requiring Revival to make additional economic commitments or incur obligations beyond those contained in Section 2 hereof.

b. Following the board transfer pursuant to Section 3 of this Agreement, the New Directors shall contemporaneously form a community advisory board for the purposes of advising the New Directors of community related issues concerning Peninsula and making recommendations with respect thereto. The community advisory board shall consist solely of any members of the current Board that wish to participate

8. <u>Insurance</u>. Following the board transfer set forth in Section 3 above, Revival will continue to maintain or acquire, as applicable, insurance covering liability for the current directors and officers of Peninsula.

9.     Indemnification.  Revival hereby agrees to indemnify and hold each member of the Board (each, an "Indemnified Party") harmless from and against any and all losses, costs, damages, fees or expenses (including reasonable attorneys' fees and expenses) incurred in connection with any claim brought against an Indemnified Party solely to the extent that such claim relates to an Indemnified Party's status as a director of Peninsula arising out of any action or failure to act by the New Directors or Peninsula following the board transfer pursuant to Section 3 of this Agreement.

10.     Expenses.  Except as otherwise set forth herein, each party shall bear its own expenses incurred in connection with the negotiation and execution of this Agreement.

11.     Confidential Information.  The terms of this Agreement shall be confidential and shall not be disclosed to any third party without the express written consent of all other parties, except as may be required by law. Furthermore, any and all data, documentation or information made available by either party to the other in connection with this Agreement shall be confidential and shall not be disclosed to any third party except to each party's attorney and other professionals as may be required to evaluate the feasibility of the contemplated transaction. Each party agrees not to use any such confidential information to the detriment of the other. If this Agreement is not signed by the parties or if the transactions contemplated by this Agreement are not consummated, each party shall return to the other all documents, data, and other information which they have exchanged.

12.     Governing Law.  This Agreement and all actions arising out of or in connection with this Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to the conflicts of law provisions of the State of New York, or of any other state. Each of Peninsula and Revival irrevocably consents to the exclusive jurisdiction and venue of any court within Nassau County, State of New York, in connection with any matter based upon or arising out of this Agreement or the matters contemplated herein, and agrees that process may be served upon them in any manner authorized by the laws of the State of New York for such persons.

13.     Counterparts.  This Agreement may be executed in counterparts, all of which shall together constitute one and the same instrument.  All documents and signatures required hereunder may be delivered or exchanged by facsimile or other electronic means and such signatures shall be effective as originals thereof.

14.     Binding Effect.  All terms and provisions of the Agreement are intended to be binding.

15.     Brokers' and Finders' Fees.  The parties hereto each represent and warrant to the other that all negotiations relative to this Agreement have been carried on by the parties directly without the intervention of any person who may be entitled to any brokerage or finder's fee or other commission in respect of this Agreement or the consummation of the transactions contemplated hereby

16.     This Agreement and the Ancillary Agreements set forth the entire understanding of the parties with respect to the transactions contemplated hereby. It shall not be amended or modified except by written instrument duly executed by each of the parties hereto.  Any and all previous agreements and understanding between or among the parties regarding the subject matter hereof, whether written or oral, are superseded by this Agreement. However following the appointment of the New Directors, no changes or modifications to this Agreement may be authorized without the consent of the Observer Directors.

17.     This Agreement shall be binding on the parties hereto and their respective successors and assigns.

18.     Any term or provision of this Agreement may be waived at any time by the party or parties entitled to the benefit thereof by a written instrument duly executed by such party or parties.

19.     The representations, warranties, covenants and agreements contained in this Agreement are for the sole benefit of the parties hereto and their heirs, administrators, legal representatives, successors and assigns, and they shall not be construed as conferring any rights on any other party.

[Remainder of Page intentionally left blank]

Sincerely,

**PENINSULA HOSPITAL CENTER**


By:_____
    Name:
    Title:

**PENINSULA CENTER FOR EXTEND
CARE AND REHABILITATION**


By:_____
    Name:
    Title:


Acknowledged and agreed to on the date first written above:

**REVIVAL ACQUISITION GROUP, LLC**

By:_____
    Name:  Isaac Soskin
    Title: Chief Operating Officer

Sincerely,

**PENINSULA HOSPITAL CENTER**

By:_____

Name:

Title:

**PENINSULA CENTER FOR EXTEND
CARE AND REHABILITATION**

By:_____

Name:

Title:

Acknowledged and agreed to on the date first written above:

**REVIVAL ACQUISITION GROUP, LLC**


By:_____

Name: Isaac Soskin

Title: Chief Operating Officer

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| [Peninsula Hospital Center, et al.,] | ) | Case No. 11- _____ ( ) |
| | ) | |
| Debtors. | ) | |
| | ) | |

## FINAL ORDER AUTHORIZING
## SECURED POSTPETITION FINANCING ON
## A SUPERPRIORITY BASIS PURSUANT TO 11 U.S.C. § 364

Upon the motion (the "Motion") dated _____, of the above-captioned debtors and debtors-in-possession (the "Debtors") for entry of a final order authorizing them to (i) incur post-petition secured indebtedness, (ii) grant security interests and superpriority claims pursuant to sections 105(a), 364(c), and 364(d) of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code") and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtors have requested that:

(a)     the Court authorize, pursuant to sections 105(a), 364(c), and 364(d) of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, and 9014, the Debtors to obtain post-petition financing up to an aggregate principal amount of $8,000,000 (the "Postpetition Financing"), pursuant to that certain Post-petition Credit and Security Agreement by and between the Debtors and [Revival] (the "Postpetition Lender") (as the same has been or may be amended, supplemented, or otherwise modified from time to time, the "Postpetition Credit Agreement"),[1] a form of which is attached to the Motion as Exhibit A;

---

[1]     Unless otherwise defined herein, all capitalized terms used herein have the meanings ascribed to them in the Postpetition Credit Agreement.