## COLLATERAL SHARING AGREEMENT

Agreement made as of the 19th day of September, 2011 between Revival Funding Co., LLC ("Lender"), Peninsula Hospital Center ("PHC") and Peninsula General Nursing Home Corp ("PGNH"), (collectively, the "Debtors") and 1199 SEIU National Benefit Fund for Health and Human Service Employees, on behalf of itself and as collecting agent for 1199 SEIU Health Care Employees Pension Fund, League/1199 SEIU Training and Upgrading Fund, 1199 SEIU Employer Child Care Fund, and League/ 1199 SEIU Health Care Industry Job Security Fund, with a principal place of business at 330 West 42" Street, New York, New York 10036 (collectively, the "Benefit Funds").

WHEREAS:

A.  PHC has consented to an order for relief under chapter 11 of the United States Bankruptcy Code and PGNH has filed a voluntary petition under chapter 11 of the United States Bankruptcy Code and the Debtors are subject to the jurisdiction of the United States Bankruptcy Court for the Eastern District of New York.

B.  Lender is willing to lend $8 million to the Debtors (the "DIP Loan") in accordance with a Post-Petition Credit and Security Agreement on condition, *inter alia*, that the Court grant a mortgage, lien and security interest on all of the Debtors' assets with priority over certaint other mortgages, liens security interests and encumbrances subject only to the provisions of this Agreement (the "Priming Lien").

C.  The Benefit Funds have filedjudgment liens against PHC and PGNC separately and have also obtained security interests in various personal property of PHC and PGNC to secure the obligations to the Benefit Funds.

D. The Lender has recorded mortgages and filed UCC financing statements against PGNC's assets (the "Lender's Pre-Petition PGNC Liens") with respect to two security agreements collateralizing two loans made to the Debtors prior to the entry of orders for relief against the Debtors

E.  The Debtors wish to obtain the Benefit Funds' consent to the use of cash collateral in which the Benefit Funds have an interest.

NOW THERFORE IT IS STIPULATED AND AGREED AS FOLLOWS:

1.  Commencing 7 days after the Court enters an order approving this Agreement and continuing until 90 days from such date  (the "Agreement Period") , the Debtors shall pay the Benefit Funds $157,000 a week (the "Weekly Adequate Assurance Payments") to be applied against post-petition amounts accruing from the Debtors to the Benefit Funds pursuant to the Debtors' collective bargaining agreement.

2.  The Benefit Funds consent to the Debtors' use of cash collateral during the Agreement Period provided that no funds may be expended by the Debtors without the written consent of the

71-070:  CSA 9-19 (CLEAN)

Benefit Funds except as set forth in the annexed Budget.  The Benefits Funds do not hereby consent to the Debtors' use of cash collateral after the Agreement Period ends.

      3.  The Benefit Funds agree that to the extent the Court authorizes the Lender to obtain the Priming Lien, Lender shall have a mortgage, lien and security interest to secure advances made pursuant to the DIP Loan in accordance with the Court order, provided that in the event of a liquidation of any of the Debtors' assets in which both the Lender and the Benefit Funds each have liens, mortgages or security interests, the proceeds remaining after the satisfaction of all claims determined by a court of competent jurisdiction to have priority over the claims of the Lender and the Benefit Funds, shall be paid in order as follows:

      (i)      To the holders of claims set forth in the Carve-out (as that term is defined in the DIP Loan Agreement documents.

      (ii)      The remaining proceeds shall be divided 60% to Lender and 40% to the Benefit Funds until such time as the respective claims they have against the asset being liquidated shall have been paid in full.

      (iii)      After one claim against a particular asset of the Debtors shall have been satisfied in full, 100% of the proceeds shall be distributed to the remaining party until such time as that party's claim is paid in full.

Lender agrees that any monies it receives on account of the DIP Loan which are proceeds of the Debtors' assets in which the Benefit Funds  have a mortgage, lien or security interest, shall be governed by the foregoing allocation formula. The Benefit Funds agree that any monies they receive on account of their judgment liens or claims secured by security interests which are proceeds of the Debtors' assets in which Lender has a mortgage, lien or security interest, shall be governed by the foregoing allocation formula.

      4.  In the event that the (i) claim(s) of either of the Benefit Funds or the Lender against the Debtors shall be reduced, disallowed or invalidated in any way, or (ii) the mortgage, lien or security interest of either of Benefit Funds or the Lender against any of the Debtors' assets shall be reduced, limited or invalidated in any way, such action shall not affect the claims, mortgages, liens or security interests of the other party in any way.

      5.  Nothing herein shall be deemed to waive the Benefit Funds' right to assert that PGNC assets are subject to the Benefit Funds' judgment liens against PHC; nor shall Lender be deemed to have waived its rights to object to such assertion; nor shall Debtors be deemed to have waived their right to object to the validity and/or priority of the aforementioned judgment liens and/or security interests held by the Benefit Funds or the Lender's Pre-Petition PGNC Liens, pursuant to 11 USC § 547 or any other applicable statute, rule or law.

      6.  The Lender's advances to PHC shall not be repaid from the assets of PGNC as long as there remain sufficient assets of PHC to repay all such advances plus applicable interest in full. The Lender's advances to PGNC shall not be repaid from the assets of PHC as long as there remain sufficient assets of PGNC to repay all such advances plus applicable interest in full.

      7.  This agreement shall apply only with respect to advances made pursuant to the terms

of the DIP Loan in the Agreement Period. Upon termination of this agreement, all advances made by Lender prior to such termination shall have the priorities and protections afforded by this agreement but advances made thereafter shall not. Termination of this agreement shall not preclude Lender from making advances under the DIP Loan except that such advances shall not be secured by mortgages, liens or security interests having any priority over the liens and security interests of the Benefit Funds.

8.    In the event that the Debtors shall fail to timely make any of the Weekly Adequate Assurance Payments or if the Debtors shall make any payment not in accordance with the Budget or with the written consent of the Benefit Funds, then the Benefit Funds shall  give written notice of such failure and their intent to terminate this agreement ten days after the giving of such notice to the Lender and the Debtors unless all missed payments are cured within such 10 day period. In the event of receipt of such notice, Lender shall have no further obligation to make any advances to the Debtors until receipt of notice from the Benefit Funds that the agreement has been reinstated.

9.    Notice shall be given by email and personal delivery at the addresses listed in the signature blocks below.

10. This agreement shall not be deemed to affect the priority of Lender's Pre-Petition PGNC Liens, which Lender acknowledges are recorded/filed after the Benefit Funds filed  their judgments against PGNC

11. The signatories below represent and warrant that they have the authority to bind the party on behalf of whom they are signing.

10.    This Agreement and all actions arising out of or in connection with this Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to the conflicts of law provisions of the State of New York, or of any other state.  Each of the parties hereto irrevocably consents to the exclusive jurisdiction and venue of the United States Bankruptcy Court for the Eastern District of  New York, in connection with any matter based upon or arising out of this Agreement or the matters contemplated herein.

11.    This Agreement may be executed in counterparts, all of which shall together constitute one and the same instrument.  All documents and signatures required hereunder may be delivered or exchanged by facsimile or other electronic means and such signatures shall be effective as originals thereof.

12.    All terms and provisions of the Agreement are intended to be binding; the invalidation of any material provision shall invalidate the whole agreement.

13.    This Agreement sets forth the entire understanding of the parties with respect to the transactions contemplated hereby.  It shall not be amended or modified except by written instrument duly executed by each of the parties hereto.  Any and all previous agreements and understanding between or among the parties regarding the subject matter hereof, whether written or oral, are superseded by this Agreement.

14.    This Agreement shall be binding on the parties hereto and their respective successors and assigns.

15.    Any term or provision of this Agreement may be waived at any time by the party or parties entitled to the benefit thereof by a written instrument duly executed by such party or parties.

16.    The representations, warranties, covenants and agreements contained in this Agreement are for the sole benefit of the parties hereto and their heirs, administrators, legal representatives, successors and assigns, and they shall not be construed as conferring any rights on any other party.

    1199SEIU National Benefit Fund for Health and Human Service Employees, on behalf of itself and as collecting agent for 1199SEIU Health Care Employees Pension Fund, League/1199SEIU Training and Upgrading Fund, 1199SEIU Employer Child Care Fund, and League/1199SEIU Health Care Industry Job Security Fund

    By:_____
        Mitra Behroozi
    Executive Director

    Abrams Fensterman, et al.
    Proposed Counsel to Debtors

    By:_____
        Deborah J. Piazza, Esq.
    630 Third Avenue, 5th Floor
    New York, NY 10017
    (212) 279-9200
    dpiazza@abramslaw.com

    Nutovic & Associates
    Counsel to Revival Funding Co., LLC

    By:_____
    Isaac Nutovic, Esq.
    488 Madison Avenue, 16th Floor
    New York, N.Y. 10022
    (212) 421-9100

71-070:  CSA 9-19 (CLEAN)