**Hearing Date: February 19, 2015**
                                                     **Hearing Time: 9:00 a.m.**

**STORCH AMINI & MUNVES PC**
*Special Counsel for Lori Lapin Jones, as Chapter 11 Trustee*
2 Grand Central Tower, 25th Floor
140 East 45th Street
New York, New York 10017
Telephone: (212) 490-4100
Bijan Amini, Esq.
Avery Samet, Esq.
Jaime Leggett, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:                                                                          Chapter 11

PENINSULA HOSPITAL CENTER, et al.,              Case No.: 11-47056 (ESS)
                                                                       Case No.: 11-47985 (ESS)

                               Debtors.                     (Jointly-Administered)
-----------------------------------------------------------x

**SUMMARY SHEET FOR THE FOURTH INTERIM APPLICATION OF STORCH AMINI & MUNVES PC, SPECIAL COUNSEL FOR LORI LAPIN JONES, THE CHAPTER 11 TRUSTEE, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES IN <u>CONNECTION WITH TRUSTEE'S SETTLEMENTS</u>**

| | |
|---|---:|
| Total Interim Compensation Requested: | <u>$1,352,354.84</u>* |
| Total Reimbursement of Expenses Requested: | <u>$30,204.48</u> |
| Total Compensation Previously Awarded: | <u>$404,775.15</u>[1] |
| Total Reimbursement of Expenses Previously Awarded: | <u>$29,631.19</u> |

∗ Contingency fee arrangements (33 1/3% of $3,875,000.00, $187,269.00, and $25,000.00 as reduced by $30,204.48 in expenses)

---

[1] This amount includes $38,108.48 in hourly fees awarded in SAM's Third Interim Fee Application pursuant to the Amended Employment Order [Dkt. No. 1103] and granted by the Court by its Order Awarding Interim Applications for Allowance of Commissions, Compensation and Reimbursement of Expenses [Dkt. No. 1289].

**STORCH AMINI & MUNVES PC**
*Special Counsel for Lori Lapin Jones, as Chapter 11 Trustee*
2 Grand Central Tower, 25th Floor
140 East 45th Street
New York, New York 10017
Telephone: (212) 490-4100
Bijan Amini, Esq.
Avery Samet, Esq.
Jaime Leggett, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
| | |
|---|---|
| In re: | Chapter 11 |
| PENINSULA HOSPITAL CENTER, et al., | Case No.: 11-47056 (ESS) |
| | Case No.: 11-47985 (ESS) |
| Debtors. | (Jointly-Administered) |

------------------------------------------------------------x

**FOURTH INTERIM APPLICATION OF STORCH AMINI & MUNVES PC, SPECIAL COUNSEL FOR LORI LAPIN JONES, THE CHAPTER 11 TRUSTEE, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES IN CONNECTION WITH TRUSTEE'S SETTLEMENTS**

TO:  THE HONORABLE ELIZABETH S. STONG
     UNITED STATES BANKRUPTCY JUDGE:

Storch Amini & Munves PC ("SAM"), special counsel to Lori Lapin Jones, Chapter 11 Trustee (the "Trustee") of Peninsula Hospital Center ("PHC") and Peninsula General Nursing Home, Inc. (d/b/a Peninsula Center for Extended Care and Rehabilitation) ("PNH" and, together with PHC, the "Debtors"), as and for its fourth interim application (the "Application") for entry of an Order, pursuant to 11 U.S.C. §§ 330 and 331, Rule 2016 of the Federal Rules of Bankruptcy Procedure and Rule 2016-1 of the Local Bankruptcy Rules for the Eastern District of New York, allowing interim compensation for services rendered in connection with the Trustee's settlements (i) of Jones v. The Estate of Steven Zakheim a/k/a Shlomo Zakheim, Suzanne Faye

1

Zakheim, Todd Miller, Samuel A. Weiss a/k/a Ari Weiss, Isaac Soskin, Revival Funding Co. LLC, Revival Acquisition Group LLC, Gamzel, NY, Inc. d/b/a Revival Home Health Care, Metropolitan Home Health Products, Inc. d/b/a MetroStar, Senior Script Pharmacy LLC, Revival Pharmacy LLC, and NAE Edison, LLC d/b/a Edison Home Health Care (Adv. Proc. No. 13-1449) (the "Revival Adversary Proceeding"), (ii) Jones v. Robert Levine (Adv. Proc. No. 13-1455) (the "Levine Adversary Proceeding"), (iii) with Alvarez & Marsal Healthcare Industry Group, LLC ("A&M"), and (iv) with Michael Kaminski and Reds' Dads, Inc. (the "Kaminski Parties"), respectfully represents as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over these cases pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue of these cases is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 330 and 331 (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2016-1 of the Local Bankruptcy Rules for the Eastern District of New York (the "Local Rules").

## PROCEDURAL BACKGROUND

4. On August 16, 2011, an involuntary petition for relief under Chapter 11 of the Bankruptcy Code was filed against PHC. On September 19, 2011, PHC consented to entry of the order for relief under Chapter 11 of the Bankruptcy Code and, on that same day, PNH filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On September 21, 2011, the Court entered an order for relief under Chapter 11 of the Bankruptcy Code [Dkt. No. 42].

2

The Debtors' cases are being jointly administered in accordance with an order of this Court [Dkt. No. 38].

5. The Debtors operated their businesses and managed their properties as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108 until the Trustee was appointed.

6. On September 22, 2011, an Official Committee of Unsecured Creditors (the "Creditors' Committee") was appointed by the Office of the United States Trustee (the "UST") [Dkt. No. 49].

7. On December 9, 2011, the Debtors consented to the appointment of an examiner in these Chapter 11 Cases [Dkt. No. 247]. The UST's appointment of Richard T. McCord, Esq. as Examiner was approved by the Court on December 16, 2011 [Dkt. No. 265]. The Examiner filed his preliminary report on January 31, 2012 [Dkt. No. 357].

8. On February 23, 2012, the New York State Department of Health ("DOH") issued two orders for summary action (the "Summary Orders") which indicated, inter alia, the existence of serious deficiencies in the administration and operation of PHC's clinical laboratory. The Summary Orders further found the continued operation of the laboratory would pose a danger to the health of current and future patients. As a result of these findings, DOH suspended the laboratory's permits and directed PHC to transfer its patients to other facilities. All general activities dependent upon the laboratory services were also suspended as a result of the issuance of the Summary Orders.

9. Based on the findings in the Summary Orders, on February 24, 2012 the UST filed a Motion seeking the appointment of a Chapter 11 Trustee (the "UST Trustee Motion") [Dkt. No. 438]. On February 26, 2012, the Debtors filed an objection to the UST Trustee Motion [Dkt. No. 445]. However, on March 6, 2012, a Consent Order Directing the Appointment of a

3

Chapter 11 Trustee, which was executed on behalf of the Debtors, the UST, the Committee, and DOH, was entered approving the UST Trustee Motion and authorizing and directing the UST to appoint a Chapter 11 Trustee for the Debtors' Chapter 11 Cases [Dkt. No. 463].

10. By Notice of Appointment of Chapter 11 Trustee dated March 9, 2012, the UST appointed Lori Lapin Jones as the Chapter 11 Trustee of the Debtors' estates [Dkt. No. 471]. By Order dated March 9, 2012, the Court approved the appointment of Lori Lapin Jones as the Chapter 11 Trustee for the Chapter 11 Cases [Dkt. No. 476].

11. By Order dated November 13, 2012, (the "<u>Employment Order</u>") [Dkt. No. 786], the Court approved the employment of SAM as special counsel for the Trustee for the purpose of (i) conducting an investigation of the Debtors, including – but not limited to – issues relating to the filing of the bankruptcy cases, the laboratory at PHC, the conduct of the Debtors' officers, directors and professionals, and certain pre- and post-petition transactions, and (ii) depending on the outcome of the investigation, commencing actions and/ or engaging in settlement negotiations on behalf of the Trustee. A copy of the Employment Order is annexed as **Exhibit "A"**. The Employment Order was amended by an Order dated July 24, 2013 (the "<u>Amended Employment Order</u>") [Dkt. No. 1103], to expand the employment of SAM to include retention on an hourly basis to represent and advise the Trustee on insurance coverage and claims issues arising out of employee-related claims (including health care claims). As set forth in the Amended Employment Order, the terms of the Employment Order remained in full force and effect, except as modified by the Amended Employment Order. This Application does not seek hourly fees relating to the work performed by SAM in connection with insurance coverage and claims issues.

12. Pursuant to the Employment Order, SAM was employed on a hybrid hourly-contingency fee basis, with SAM's hourly fees capped at $100,000.00 and a contingency fee of 33 1/3 % of any resulting recoveries, calculated after deducting any expense reimbursements owed to SAM and the amount of the $100,000 in hourly fees paid or to be paid to SAM from the amount of the recoveries. (Employment Order ¶ 4). With respect to the recoveries, "[t]o the extent that any work of SAM results in a reduction of claims asserted against the Debtors' estates, compensation to SAM for such reduction shall be paid . . . in an amount and manner to be negotiated in good faith between SAM and the Trustee, but in no event to exceed 33 1/3% of such claim reduction." (Id. at ¶ 5). In addition, SAM initially capped its investigation expenses at $10,000 for reimbursement, "without prejudice to further application to increase that cap as expenses are incurred and funds are available. . . ." (Id. at ¶ 3).

13. On March 25, 2013, SAM filed its First Interim Application for Allowance of Compensation and Reimbursement of Expenses (the "<u>First Interim Application</u>") seeking the award of hourly fees in the amount of $100,000.00 on account of services rendered for the period November 1, 2012 through February 28, 2013, and reimbursement of actual and necessary expenses in the amount of $4,010.30, for a total interim award of $104,010.30.

14. By Order dated April 24, 2013 [Dkt. No. 1012], this Court granted the First Interim Application and the amounts awarded were paid.

15. On October 4, 2013, SAM filed its Second Interim Application for Allowance of Compensation and Reimbursement of Expenses (the "<u>Second Interim Application</u>") seeking the award of fees in the amount of $266,666.67 on account of services rendered in connection with the Trustee's settlement with the MediSys Health Network, Inc., and reimbursement of actual and necessary expenses in the amount of $24,399.24, for a total interim award of $291,065.91.

The Second Interim Application sought compensation for 33 1/3% of a $1.1 million settlement (or $366,666.67), as reduced to $266,666.67 on account of the $100,000 already paid.

16. By Order dated October 30, 2013 [Dkt. No. 1214], this Court granted the Second Interim Application and the amounts awarded were paid.

17. On January 31, 2014, pursuant to the Amended Employment Order[2] [Dkt. No. 1103], SAM filed its Third Interim Application for Allowance of Compensation and Reimbursement of Expenses (the "Third Interim Application") seeking an award based on hourly fees in the PHC case only in the amount of $38,108.48 for services rendered on account of insurance and claims issues for the period June 23, 2013 through December 31, 2013, and reimbursement of actual and necessary expenses in the amount of $1,221.65, for a total interim award of $39,330.13.

18. By Order dated February 28, 2014 [Dkt. No. 1289], this Court granted the Third Interim Application and the amounts awarded were paid.

## RELIEF REQUESTED

19. By this Application, SAM seeks allowance of interim compensation of $1,352,354.84 for legal services rendered as special counsel to the Trustee in connection with the Trustee's settlements with (i) the parties to the Revival Adversary Proceeding (not including defaulting party Senior Script Pharmacy LLC), the parties to the Levine Adversary Proceeding (together with the parties to the Revival Adversary Proceeding but not Senior Script Pharmacy LLC, the "Global Settlement Parties"), Zurich American Insurance Company ("Zurich") and National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") (the "Global Settlement"), (ii) A&M (the "A&M Settlement"), and (iii) the Kaminski Parties (the "Kaminski

---

[2] As noted above, the Amended Employment Order authorized the Trustee to retain SAM on an hourly basis to provide services relating to insurance coverage and claims issues arising out of employee-related claims (including health care claims).

6

Settlement") (together with the Global Settlement and the A&M Settlement, the "Settlements") (the "Fee Request"), which resulted in recoveries and benefits to the Debtors' estates totaling at least $3,875,000.00, $187,269.00 and $25,000.00, respectively. SAM's contingency fee is calculated at 33 1/3% of $4,057,064.52 ($4,087,269.00 less expenses of $30,204.48).

20. This is SAM's fourth application for an interim allowance of fees in connection with its representation of the Trustee as special counsel. All of the services for which interim compensation is sought herein were rendered for and on behalf of the Trustee and not on behalf of any other person or entity.

## SUMMARY OF SERVICES RENDERED

21. This Application provides an overview of the tasks performed by SAM related to the Settlements.

22. In connection with the Settlements, SAM's work included, but was not limited to:

    a) in-person meetings with the Trustee, the former director of finance for the estates, the Trustee's accountant and certain staff members of the Debtors, as well as numerous email and telephone communications with them;

    b) communicated with former counsel for the Debtors (and their counsel) concerning the voluntary turnover of paper and electronic documents;

    c) interviewed and communicated with the Debtors' financial advisors concerning the voluntary turnover of paper and electronic documents;

    d) prepared motions for Bankruptcy Rule 2004 examinations and conducted examinations of:

        a. Steven Zakheim, which spanned two days;

        b. Isaac Soskin, the Chief Executive Officer of Revival Funding;

        c. Allen Corby, PHC's former Vice President of Operations;

        d. Robert Levine, the Debtors' former chief executive officer, which spanned three days;

        e. Todd Miller, the Debtors' Chief Executive Officer;

- f. Lou Caucig, a former member of the Board of Directors of the Debtors;
- g. Michael Kaminski, the Debtors' Chief Restructuring Officer;
- h. Howard Fensterman, Esq. managing partner of the Debtors' former counsel, which spanned two days;
- i. Abiola Familusi, PHC's former director of the traumatic brain injury unit;
- j. Isaac Newman, the Chief Executive Officer of Metropolitan Home Health Products d/b/a MetroStar ("MetroStar");
- k. Mark Skulnick, PHC's former Chief Financial Officer;
- l. Patrick McNamara, the Director of Finance for MediSys Health Network;
- m. Gershon Sontag, the President of Analytical Diagnostics Labs, which performed services for PHC's laboratory; and
- n. Mounir Doss, the Executive Vice President and Chief Financial Officer for MediSys Health Network.

e) conducted interviews or otherwise communicated with individuals or entities not subject to the Bankruptcy Rule 2004 Motions, and gathered and reviewed documents from same;

f) obtained the production by A&M, Robert Levine, Todd Miller, MetroStar, and a numerous other parties of a substantial number of documents and reviewed the documents produced;

g) prepared, researched and filed an 82-page complaint asserting 18 causes of action against Steven Zakheim, Suzanne Faye Zakheim, Todd Miller, Revival Funding Co. LLC, Revival Acquisition Group LLC, Metropolitan Home Health Products, Inc. d/b/a MetroStar, Gamzel LLC, Revival Pharmacy LLC, Samuel A. Weiss a/k/a Ari Weiss, Isaac Soskin, Gamzel, NY, Inc. d/b/a Revival Home Health Care, NAE Edison, LLC d/b/a Edison Home Health Care, and Senior Script Pharmacy LLC;

h) prepared, researched and filed a complaint against Robert Levine;

i) prepared for and participated in formal mediation with the Global Settlement Parties, Zurich, and National Union (including preparation of a mediation statement for two days of in-person mediation sessions and continual mediated settlement discussions over approximately six months);

j) conducted in-person, telephonic, and email settlement discussions with A&M;

k)  conducted telephonic and email settlement discussions with the Kaminski Parties;

l)  advised and represented the Trustee in her settlements with the Global Settlement Parties, Zurich, National Union, A&M, and the Kaminski Parties;

m) prepared and exhaustively negotiated the settlement stipulations with the Global Settlement Parties, Zurich, A&M, and the Kaminski Parties, as well as the Memorandum of Understanding with National Union;

n)  prepared Tolling Agreements and related amendments with various parties;

o)  prepared and filed three 9019 Motions for approval of the Settlements;

p)  attended hearings on the motions to approve the Global Settlement and the A&M Settlement, submitted the Order on presentment approving the Kaminski Settlement, and prepared the Orders approving the Global Settlement and the A&M Settlement;

q)  reviewed the entire Court docket and every transcript in these cases (prior to the appointment of the Trustee) and relevant orders;

r)  gathered and reviewed the Debtors' records, including the Debtors' financial information and internal emails;

s)  reviewed publicly available information relating to the investigation topics;

t)  reviewed insider transactions;

u)  consulted with and reported regularly to the Trustee on the status of the investigation, issues that arose, and strategies to employ; and

v)  communicated with general counsel and special healthcare counsel to the Trustee.

## CALCULATION OF COMPENSATION AND BASIS FOR RELIEF REQUESTED

23. SAM's Fee Request of $1,352,354.84 is based on the three Settlements achieved by the Trustee and approved by the Court. The calculation of the Fee Request is based on the contingency fee arrangement approved by the Court [Dkt. No. 786]. That fee arrangement provided for a flat 33 1/3% contingency fee on recoveries realized by the Trustee with respect to any claim or cause of action which SAM pursues through settlement, suit or otherwise after first deducting expense reimbursements owed to SAM. In addition, SAM is entitled to a percentage

recovery, not to exceed 33 1/3% of claims reductions, in an amount to be negotiated in good faith between SAM and the Trustee [Dkt. No. 786].

24. Set forth below is a breakdown of each of the Settlements and the calculation of SAM's fees.

Global Settlement

25. The Trustee achieved a global settlement of the Revival Adversary Proceeding and the Levine Adversary Proceeding in which she was represented by SAM. The filing of the adversary proceedings was the culmination of an extensive investigation performed by SAM which included, inter alia, (a) taking numerous Bankruptcy Rule 2004 examinations, (b) reviewing thousands of documents, (c) reviewing voluminous Court records, (d) performing fact and legal research, and (e) interviewing individuals associated with the Debtors. The Revival Adversary Proceeding was an 82-page, 18-count complaint against 13 defendants. It alleged causes of action for, inter alia, RICO, fraud on the Court, equitable subordination, breaches of fiduciary duty, unauthorized post-petition transfers, and fraudulent transfers. The Levine Adversary Proceeding was against Levine, the Debtors' former Chief Executive Officer, and alleged, inter alia, that Levine had breached his employment contract as well as his fiduciary duties of loyalty and care owed to the Debtors.

26. The Global Settlement Parties and the Trustee agreed to mediation, which also included participation by two insurance companies (Zurich and National Union). The parties exchanged mediation statements, participated in person for two full days of mediation and thereafter continuously negotiated for months until a global settlement was reached. The issues were complex, comprehensive and contentious. The parties also initially litigated over the defense costs covered under the insurance policies.

27. Negotiations were extremely difficult and lengthy. Even after the financial components of the Global Settlement were achieved, the documentation process was protracted. Seven sets of attorneys were involved and non-financial components of the Global Settlement were hotly negotiated.

28. SAM led the documentation efforts and also prepared a detailed Bankruptcy Rule 9019 motion, an application for shortened notice (certain parties required a year-end closing) and related filings. A hearing was held on December 19, 2014, at which the Global Settlement was approved, and an order was entered that day. Notably, there were no objections to the Global Settlement.

29. The financial features of the Global Settlement provide for (a) a $1,100,000 payment from Zurich, which payment the Trustee has received; (b) a $1,175,000 payment from National Union, which payment the Trustee has received; (c) a reduction by Revival Funding Co. LLC ("Revival Funding") by at least $1.7 million (see paragraphs 32-33 below) of its secured claims, resulting in a net payment by PNH to Revival Funding of $3,000,000, which payment the Trustee has made; and (d) a release by each of the parties virtually claims against the estates including a release by Levine of a filed administrative expense claim in excess of $800,000.

30. SAM calculates its contingency fee at 33 1/3% of (a) $1,100,000 (the Zurich payment), (b) $1,175,000 (the National Union payment), and (c) $1,600,000 (the Revival Funding claims reductions), after deducting SAM's expenses from all of the proceeds of the Settlements (as further explained below).

31. As expressly set forth in SAM's retention application and the Employment Order, calculation of SAM's contingency fee on claims reductions are to be negotiated in good faith between SAM and the Trustee and shall not exceed 33 1/3% of the claim reduction. As the

Trustee explained to SAM when SAM's retention was being negotiated, the Trustee was unwilling to agree upfront to a 33 1/3% fee on all claims reductions because the Trustee believed contingency fees on claims reductions should be decided on a case-by-case basis. This was because a claim reduction by a certain dollar amount does not necessarily result in an equal dollar value to the estates as all claims being reduced may not have received a 100% distribution. Accordingly, the Trustee wanted to evaluate contingency fees for claims reductions on a case-by-case basis.

32. The Trustee fully supports a 33 1/3% contingency fee (with one limitation) on the claims reductions by Revival Funding. Had Revival Funding prevailed, Revival Funding would have received a 100% distribution on its claim because the PNH sale proceeds fully covered payment on account of Revival Funding's secured claims. For that reason, the claims reduction by Revival Funding has a dollar for dollar benefit to the estate – i.e., the PNH estate has cash of at least $1.7 million dollars which is now unencumbered from the asserted claims of Revival Funding.

33. The Trustee calculates Revival Funding's claims reductions to be at least $1.7 million (principal, interest, and origination fees) plus attorneys' fees and other add-ons asserted by Revival Funding. The Trustee requested that SAM limit its contingency fee on the Revival Funding claims reductions to 33 1/3% of $1.6 million. In the context of the overall Fee Request, SAM has agreed to this limitation.

34. The Trustee has also requested that SAM not seek a contingency fee on any portion of the Levine claims waivers. In the context of the overall Fee Request, SAM has agreed.

### A&M Settlement

35. The Trustee achieved a settlement with A&M in which she was represented by SAM. A&M were the Debtors' financial advisors. The Trustee raised with A&M issues of disclosure and accuracy/completeness of the A&M retention documents. In connection with these issues, SAM reviewed numerous documents (including documents produced by A&M), conducted legal research and obtained tolling agreements. SAM led negotiations with A&M which included an in-person meeting attended by the Trustee, members of A&M and A&M's outside counsel, and numerous follow-up communications.

36. A settlement with A&M was reached. SAM prepared the stipulation which went through substantial negotiations and drafts. Thereafter, SAM prepared a Bankruptcy Rule 9019 motion and proposed order. The A&M Settlement was approved by Order dated January 8, 2015. Notably, there were no objections to the A&M Settlement.

37. The financial features of the A&M settlement provided for A&M to repay the PHC estate $187,269. In addition, A&M waived the right to seek repayment of in excess of $300,000 in asserted fees it incurred that were outstanding.

38. SAM calculates its contingency fee on the A&M Settlement at 33 1/3% of $187,269, after deducting SAM's expenses from all of the proceeds of the Settlements (as further explained below). The Trustee has requested that SAM not seek a contingency fee on any portion of the A&M claims waiver. In the context of the overall Fee Request, SAM has agreed to this limitation.

### Kaminski Settlement

39. The Trustee achieved a settlement with the Kaminski Parties in which she was represented by SAM. Michael Kaminski served as the Debtors' Chief Restructuring Officer for

13

several months in 2011. The Trustee raised issues concerning conflicts, disclosure and adequacy of services rendered by Michael Kaminski (who billed the estates through Reds' Dads). In connection with these issues, SAM reviewed numerous documents and conducted a Bankruptcy Rule 2004 examination of Michael Kaminski. SAM also obtained tolling agreements with the Kaminski Parties. Thereafter, SAM conducted settlement negotiations with the Kaminski Parties through their counsel.

40. A settlement with the Kaminski Parties was reached. SAM prepared the stipulation and noticed it for Court approval. The Court approved the Kaminski Settlement by Order dated January 6, 2015. There were no objections to the Kaminski Settlement.

41. The Kaminski Settlement was for $25,000 and the funds have been received by the Trustee.

42. SAM calculates its contingency fee on the Kaminski Settlement at 33 1/3% of $25,000, after deducting SAM's expenses from all of the proceeds of the Settlements (as further explained below).

Calculation of Fee Request

43. As discussed above, SAM's contingency fee is calculated at 33 1/3% of the recoveries and the $1.6 million Revival Funding claims reduction, after deducting SAM's expenses. The Global Settlement resulted in payments of $2,275,000 and a claims reduction by Revival Funding of $1,600,000; the A&M Settlement resulted in payment of $187,269; and the Kaminski Settlement resulted in payment of $25,000, which recoveries and benefits aggregate to $4,087,269.00. This amount is reduced by SAM's expenses of $30,204.48 to $4,057,064.52. 33 1/3% of the reduced amount of $4,057,064.52 results in Fee Request of $1,352,354.84.

14

44. Although SAM's compensation is contingency-based and not based on hours incurred, SAM nevertheless maintains written records of time spent by attorneys and paraprofessionals performing legal services on behalf of the Trustee. Such time records are generally made contemporaneously with the rendering of services by the person rendering such services and in the ordinary course of the SAM's practice. The records reflect the name of the attorney or paraprofessional, the date on which the services were performed, the services rendered and the amount of time spent performing the services. Redacted copies of SAM's time records are annexed as **Exhibit "B"**.[3] Included in SAM's time records is a list of the attorneys and paraprofessionals who worked on these cases, the aggregate time spent, current hourly billing rates and the value of the total time expended. Since certain of the time entries disclose privileged and other sensitive information relating to SAM's ongoing litigation and investigation into potential causes of action, SAM is filing a redacted version of its time records. Without waiving any privilege, SAM will submit an unredacted version for in camera inspection to the Court and to the United States Trustee. The Trustee has reviewed an unredacted version of the time records.

**REIMBURSEMENT OF EXPENSES**

45. It is respectfully submitted that the Court should also allow SAM reimbursement for its expenses in the amounts of $30,204.48 as set forth on **Exhibit "C"**, consisting of expenses incurred in connection with the investigations and Settlements. See In re Poseidon Pools, 216 B.R. at 101 ("Bankruptcy Courts . . . often allow reimbursement of expenses.").

46. The charges for which SAM seeks reimbursement are not included in SAM's overhead and none of the charges for which SAM seeks reimbursement are being charged above

---

[3] Portions of these time records were submitted in support of SAM's First Interim Application and Second Interim Application. Most of SAM's investigatory/litigation work has been inter-related and relates to the Settlements for which SAM seeks its contingency fee award. In addition, the investigatory work is still ongoing.

15

cost to SAM. Accordingly, allowing such reimbursement will not result in an "estate [being] unnecessarily burdened, and a law firm undeservedly benefitted." See In re Croton River Club, 162 B.R. 656, 662 (Bankr. S.D.N.Y. 1993). Rather, SAM is asking only to be reimbursed for the actual out-of-pocket expenses incurred in its representation of the Trustee with respect to administration of these bankruptcy cases. The largest categories of expenses include transcript costs, paralegal overtime, Westlaw, and electronic hosting services. The electronic hosting services were only for the Debtors' cases and were necessary due to the sheer volume of electronic documents involved.

**NOTICE**

47. SAM respectfully requests that the Court approve as adequate and appropriate notice service of the Notice of Hearing for this Application on: (a) the Office of the United States Trustee; (b) the Official Committee of Unsecured Creditors, through counsel; (c) the New York State Department of Health, through counsel; (d) 1199 SEIU National Benefit Fund for Health and Human Service Employees, through counsel; (e) 1199 SEIU United Healthcare Workers East, through counsel; (f) the former Patient Care Ombudsman and his counsel; (g) the Office of the United States Attorney; (h) the United States Department of Labor; (i) the Office of the New York State Attorney General; (j) all parties who filed a notice of appearance; (k) applicable taxing authorities; (l) the Debtors' retained professionals; and (m) the parties listed on the core service list maintained by The Garden City Group Inc.

48. Bankruptcy Rule 2002(a) requires notice on all creditors by mail of a "hearing on any entity's request for compensation or reimbursement of expenses if the request exceeds $1,000." FED. R. BANKR. P. 2002(a). In these cases, there are well over 1,000 creditors

(including former employees) and interested parties, and service on all those entities would be expensive.

49. Accordingly, under the circumstances of these cases, SAM submits the proposed notice on those creditors and interested parties identified above is adequate.

## **CONCLUSION**

50. SAM submits that the services it performed in connection with the Settlements were complex and comprehensive and resulted in substantial and tangible benefits to the estates, and the award requested herein is warranted.

51. No agreement or understanding exists between SAM and any other person for the sharing of compensation received for services rendered in connection with the representation of the Trustee.

52. No division of compensation will be made by SAM and no action prohibited by Bankruptcy Code § 504 has been made or will be made by SAM.

53. Except as set forth above, no prior application has been made to this or any other Court for the relief requested herein.

**WHEREFORE,** SAM respectfully requests entry of an order:

(a) awarding $1,352,354.84 as interim compensation for SAM's services rendered in connection with the Settlements;

(b) allowing reimbursement of the SAM's expenses in the amount of $30,204.48;

(c) authorizing payment of such compensation; and

(d) granting such other and further relief as this Court may deem just and proper**.**

Dated: New York, New York
January 16, 2014

**STORCH AMINI & MUNVES PC**
*Special Counsel to Lori Lapin Jones, as Chapter 11 Trustee*

By: /s/ Avery Samet
Bijan Amini, Esq.
Avery Samet, Esq.
Jaime Leggett, Esq.
2 Grand Central Tower, 25th Floor
140 East 45th Street
New York, New York 10017
Telephone: (212) 490-4100