**Hearing Date: May 31, 2015**
**Hearing Time: 10:30 a.m.**

**STORCH AMINI & MUNVES PC**
*Special Counsel for Lori Lapin Jones, as Chapter 11 Trustee*
2 Grand Central Tower, 25th Floor
140 East 45th Street
New York, New York 10017
Telephone: (212) 490-4100
Bijan Amini, Esq.
Avery Samet, Esq.
Jaime Leggett, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| PENINSULA HOSPITAL CENTER, et al., | Case No.: 11-47056 (ESS) |
| | Case No.: 11-47985 (ESS) |
| Debtors. | (Jointly-Administered) |

-------------------------------------------------------------x

**SUMMARY SHEET FOR THE SIXTH INTERIM APPLICATION OF STORCH AMINI & MUNVES PC, SPECIAL COUNSEL FOR LORI LAPIN JONES, THE CHAPTER 11 TRUSTEE, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES IN CONNECTION WITH TRUSTEE'S SETTLEMENTS**

| | |
|---|---:|
| Total Interim Compensation Requested: | $147,871.51* |
| Total Reimbursement of Expenses Requested: | $1,385.46 |
| Total Compensation Previously Awarded: | $1,875,327.43[1] |
| Total Reimbursement of Expenses Previously Awarded: | $61,463.62 |

∗ Contingency fee arrangements (33 1/3% of $220,000.00, $100,000.00, $100,000.00, and $25,000.00, as reduced by $1,385.46 in expenses)

---

[1] This amount includes $162,451.20 in hourly fees awarded in SAM's Third Interim Fee Application and Fifth Interim Fee Application, both pursuant to the Amended Employment Order [Dkt. No. 1103], and granted by the Court by its Order Awarding Interim Applications for Allowance of Commissions, Compensation and Reimbursement of Expenses [Dkt. No. 1289] and its Order Awarding Interim Applications for Allowance of Commissions, Compensation and Reimbursement of Expenses [Dkt. No. 1493], respectively. The balance of the fee award was on a contingency basis.

**STORCH AMINI & MUNVES PC**
*Special Counsel for Lori Lapin Jones, as Chapter 11 Trustee*
2 Grand Central Tower, 25th Floor
140 East 45th Street
New York, New York 10017
Telephone: (212) 490-4100
Bijan Amini, Esq.
Avery Samet, Esq.
Jaime Leggett, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| PENINSULA HOSPITAL CENTER, <u>et al.</u>, | Case No.: 11-47056 (ESS) |
| | Case No.: 11-47985 (ESS) |
| Debtors. | (Jointly-Administered) |

-------------------------------------------------------------x

**SIXTH INTERIM APPLICATION OF STORCH AMINI & MUNVES PC, SPECIAL COUNSEL FOR LORI LAPIN JONES, THE CHAPTER 11 TRUSTEE, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES IN CONNECTION WITH <u>TRUSTEE'S SETTLEMENTS</u>**

TO: THE HONORABLE ELIZABETH S. STONG
UNITED STATES BANKRUPTCY JUDGE:

Storch Amini & Munves PC ("<u>SAM</u>"), special counsel to Lori Lapin Jones, Chapter 11 Trustee (the "<u>Trustee</u>") of Peninsula Hospital Center ("<u>PHC</u>") and Peninsula General Nursing Home, Inc. (d/b/a Peninsula Center for Extended Care and Rehabilitation) ("<u>PNH</u>" and, together with PHC, the "<u>Debtors</u>"), as and for its sixth interim application (the "<u>Application</u>") for entry of an Order, pursuant to 11 U.S.C. §§ 330 and 331, Rule 2016 of the Federal Rules of Bankruptcy Procedure and Rule 2016-1 of the Local Bankruptcy Rules for the Eastern District of New York, allowing interim compensation for services rendered in connection with the Trustee's settlements (i) with Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP ("<u>AF</u>"); (ii)

1

with Nixon Peabody LLP ("NP"); (iii) with Foley & Lardner LLP ("Foley"); and (iv) in Jones v. LI Script LLC (Adv. Proc. No. 13-1448) (the "LI Script Adversary Proceeding"), respectfully represents as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over these cases pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue of these cases is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 330 and 331 (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2016-1 of the Local Bankruptcy Rules for the Eastern District of New York (the "Local Rules").

## PROCEDURAL BACKGROUND

4. On August 16, 2011, an involuntary petition for relief under Chapter 11 of the Bankruptcy Code was filed against PHC. On September 19, 2011, PHC consented to entry of the order for relief under Chapter 11 of the Bankruptcy Code and, on that same day, PNH filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On September 21, 2011, the Court entered an order for relief under Chapter 11 of the Bankruptcy Code [Dkt. No. 42]. The Debtors' cases are being jointly administered in accordance with an order of this Court [Dkt. No. 38].

5. The Debtors operated their businesses and managed their properties as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108 until the Trustee was appointed.

6. On September 22, 2011, an Official Committee of Unsecured Creditors (the "Creditors' Committee") was appointed by the Office of the United States Trustee (the "UST") [Dkt. No. 49].

7. On December 9, 2011, the Debtors consented to the appointment of an examiner in these Chapter 11 Cases [Dkt. No. 247]. The UST's appointment of Richard T. McCord, Esq. as Examiner was approved by the Court on December 16, 2011 [Dkt. No. 265]. The Examiner filed his preliminary report on January 31, 2012 [Dkt. No. 357].

8. On February 23, 2012, the New York State Department of Health ("DOH") issued two orders for summary action (the "Summary Orders") which indicated, inter alia, the existence of serious deficiencies in the administration and operation of PHC's clinical laboratory. The Summary Orders further found the continued operation of the laboratory would pose a danger to the health of current and future patients. As a result of these findings, DOH suspended the laboratory's permits and directed PHC to transfer its patients to other facilities. All general activities dependent upon the laboratory services were also suspended as a result of the issuance of the Summary Orders.

9. Based on the findings in the Summary Orders, on February 24, 2012 the UST filed a Motion seeking the appointment of a Chapter 11 Trustee (the "UST Trustee Motion") [Dkt. No. 438]. On February 26, 2012, the Debtors filed an objection to the UST Trustee Motion [Dkt. No. 445]. However, on March 6, 2012, a Consent Order Directing the Appointment of a Chapter 11 Trustee, which was executed on behalf of the Debtors, the UST, the Committee, and DOH, was entered approving the UST Trustee Motion and authorizing and directing the UST to appoint a Chapter 11 Trustee for the Debtors' Chapter 11 Cases [Dkt. No. 463].

10. By Notice of Appointment of Chapter 11 Trustee dated March 9, 2012, the UST appointed Lori Lapin Jones as the Chapter 11 Trustee of the Debtors' estates [Dkt. No. 471]. By Order dated March 9, 2012, the Court approved the appointment of Lori Lapin Jones as the Chapter 11 Trustee for the Chapter 11 Cases [Dkt. No. 476].

11. By Order dated November 13, 2012, (the "Employment Order") [Dkt. No. 786], the Court approved the employment of SAM as special counsel for the Trustee for the purpose of (i) conducting an investigation of the Debtors, including – but not limited to – issues relating to the filing of the bankruptcy cases, the laboratory at PHC, the conduct of the Debtors' officers, directors and professionals, and certain pre- and post-petition transactions, and (ii) depending on the outcome of the investigation, commencing actions and/ or engaging in settlement negotiations on behalf of the Trustee. A copy of the Employment Order is annexed as **Exhibit "A"**. The Employment Order was amended by an Order dated July 24, 2013 (the "Amended Employment Order") [Dkt. No. 1103], to expand the employment of SAM to include retention on an hourly basis to represent and advise the Trustee on insurance coverage and claims issues arising out of employee-related claims (including health care claims). As set forth in the Amended Employment Order, the terms of the Employment Order remained in full force and effect, except as modified by the Amended Employment Order. This Application does not seek hourly fees relating to the work performed by SAM in connection with insurance coverage and claims issues.

12. Pursuant to the Employment Order, SAM was employed on a hybrid hourly-contingency fee basis, with SAM's hourly fees capped at $100,000.00 and a contingency fee of 33 1/3 % of any resulting recoveries, calculated after deducting any expense reimbursements owed to SAM and the amount of the $100,000 in hourly fees paid or to be paid to SAM from the

amount of the recoveries. (Employment Order ¶ 4). With respect to the recoveries, "[t]o the extent that any work of SAM results in a reduction of claims asserted against the Debtors' estates, compensation to SAM for such reduction shall be paid . . . in an amount and manner to be negotiated in good faith between SAM and the Trustee, but in no event to exceed 33 1/3% of such claim reduction." (Id. at ¶ 5). In addition, SAM initially capped its investigation expenses at $10,000 for reimbursement, "without prejudice to further application to increase that cap as expenses are incurred and funds are available. . . ." (Id. at ¶ 3).

13. On March 25, 2013, SAM filed its First Interim Application for Allowance of Compensation and Reimbursement of Expenses (the "First Interim Application") seeking the award of hourly fees in the amount of $100,000.00 on account of services rendered for the period November 1, 2012 through February 28, 2013, and reimbursement of actual and necessary expenses in the amount of $4,010.30, for a total interim award of $104,010.30.

14. By Order dated April 24, 2013 [Dkt. No. 1012], this Court granted the First Interim Application and the amounts awarded were paid.

15. On October 4, 2013, SAM filed its Second Interim Application for Allowance of Compensation and Reimbursement of Expenses (the "Second Interim Application") seeking the award of fees in the amount of $266,666.67 on account of services rendered in connection with the Trustee's settlement with the MediSys Health Network, Inc., and reimbursement of actual and necessary expenses in the amount of $24,399.24, for a total interim award of $291,065.91. The Second Interim Application sought compensation for 33 1/3% of a $1.1 million settlement (or $366,666.67), as reduced to $266,666.67 on account of the $100,000 already paid.

16. By Order dated October 30, 2013 [Dkt. No. 1214], this Court granted the Second Interim Application and the amounts awarded were paid.

17. On January 31, 2014, pursuant to the Amended Employment Order[2] [Dkt. No. 1103], SAM filed its Third Interim Application for Allowance of Compensation and Reimbursement of Expenses (the "Third Interim Application") seeking an award based on hourly fees in the PHC case only in the amount of $38,108.48 for services rendered on account of insurance and claims issues for the period June 23, 2013 through December 31, 2013, and reimbursement of actual and necessary expenses in the amount of $1,221.65, for a total interim award of $39,330.13.

18. By Order dated February 28, 2014 [Dkt. No. 1289], this Court granted the Third Interim Application and the amounts awarded were paid.

19. On January 16, 2015, SAM filed its Fourth Interim Application for Allowance of Compensation and Reimbursement of Expenses (the "Fourth Interim Application") seeking the award of fees in the amount of $1,352,354.84 on account of services rendered in connection with the Trustee's settlements (i) of Jones v. The Estate of Steven Zakheim a/k/a Shlomo Zakheim, Suzanne Faye, Zakheim, Todd Miller, Samuel A. Weiss a/k/a Ari Weiss, Isaac Soskin, Revival Funding Co. LLC, Revival Acquisition Group LLC, Gamzel, NY, Inc. d/b/a Revival Home Health Care, Metropolitan Home Health Products, Inc. d/b/a MetroStar, Senior Script Pharmacy LLC, Revival Pharmacy LLC, and NAE Edison, LLC d/b/a Edison Home Health Care (Adv. Proc. No. 13-1449) (the "Revival Adversary Proceeding"), (ii) Jones v. Robert Levine (Adv. Proc. No. 13-1455) (the "Levine Adversary Proceeding"), (iii) with Alvarez & Marsal Healthcare Industry Group, LLC ("A&M"), and (iv) with Michael Kaminski and Reds' Dads, Inc. (the "Kaminski Parties"), and reimbursement of actual and necessary expenses in the amount of $30,204.48, for a total interim award of $1,382,559.32. The Fourth Interim

---

[2] As noted above, the Amended Employment Order authorized the Trustee to retain SAM on an hourly basis to provide services relating to insurance coverage and claims issues arising out of employee-related claims (including health care claims).

6

Application sought compensation for 33 1/3% of (i) a $3,875,000.00 settlement of the Revival Adversary Proceeding and the Levine Adversary Proceeding, (ii) a $187,269.00 settlement with A&M, and (iii) a $25,000 settlement with the Kaminski Parties (or $4,087,269.00 less expenses of $30,204.48).

20. By Order dated February 19, 2015 [Dkt. No. 1404], this Court granted the Fourth Interim Application and the amounts awarded were paid.

21. On September 18, 2015, pursuant to the Amended Employment Order[3] [Dkt. No. 1103], SAM filed its Fifth Interim Application for Allowance of Compensation and Reimbursement of Expenses (the "Fifth Interim Application") seeking an award based on hourly fees (i) in the PHC case in the amount of $37,093.72 for services rendered on account of insurance and claims issues for the period January 1, 2014 through June 30, 2015, and reimbursement of actual and necessary expenses in the amount of $182.28, and (ii) in the PGN case in the amount of $87,249.00 for services rendered on account of insurance and claims issues for the period June 23, 2013 through June 30, 2015, and reimbursement of actual and necessary expenses in the amount of $1,445.67, for a total interim award of $125,970.67 on account of the PHC and PGN cases.

22. By Order dated November 18, 2015 [Dkt. No. 1493], this Court granted the Fifth Interim Application and $74,534.67 of the amounts awarded were paid.

## **RELIEF REQUESTED**

23. By this Application, SAM seeks allowance of interim compensation of $147,871.51 for legal services rendered as special counsel to the Trustee in connection with the Trustee's settlements with (i) AF (the "AF Settlement"); (ii) NP (the "NP Settlement"); (iii)

---

[3] As noted above, the Amended Employment Order authorized the Trustee to retain SAM on an hourly basis to provide services relating to insurance coverage and claims issues arising out of employee-related claims (including health care claims).

7

Foley (the "Foley Settlement"); and (iv) LI Script LLC ("LI Script") in resolution of the LI Script Adversary Proceeding (the "LI Script Settlement") (together with the AF Settlement, the NP Settlement, and the Foley Settlement, the "Settlements") (the "Fee Request"), which resulted or will result in recoveries and benefits to the Debtors' estates totaling at least $220,000.00, $100,000.00, $100,000.00, and $25,000.00,[4] respectively. SAM's contingency fee is calculated at 33 1/3% of $443,614.54 ($445,000.00 less expenses of $1,385.46).

24. This is SAM's fourth application for an interim allowance of fees in connection with its representation of the Trustee as special counsel. All of the services for which interim compensation is sought herein were rendered for and on behalf of the Trustee and not on behalf of any other person or entity.

### SUMMARY OF SERVICES RENDERED / CALCULATION OF COMPENSATION REQUEST

25. This Application provides an overview of the tasks performed by SAM related to the Settlements.

26. The work SAM performed through January 14, 2015 has been set forth in the prior fee applications of SAM, and the work performed by SAM prior to that date provided substantial and necessary assistance to obtaining the settlements for which compensation is sought in this Application. The time records annexed to this Application cover the period since the last fee application through April 27, 2016.

27. SAM's Fee Request of $147,871.51 is based on the four Settlements achieved by the Trustee and approved by the Court. The calculation of the Fee Request is based on the

---

[4] The AF Settlement provides for AF to pay $220,000 over a period of twenty months and further provides that in the event of an uncured default in payment or more than three defaults in making timely payments, the Trustee shall be entitled to a judgment against AF in the amount of $300,000.00 less the amount of any payments made by AF pursuant to the AF Settlement. In the event that the Trustee recovers more than $220,000.00 pursuant to the AF Settlement, SAM shall be entitled to 33 1/3% of such excess amounts. As of May 6, 2016, no settlement proceeds have been collected by the Trustee on account of the AF Settlement. SAM seeks payment of its Fee Request relating to the AF Settlement only as and when payments are made by AF to the Trustee.

8

contingency fee arrangement approved by the Court [Dkt. No. 786]. That fee arrangement provided for a flat 33 1/3% contingency fee on recoveries realized by the Trustee with respect to any claim or cause of action which SAM pursues through settlement, suit or otherwise after first deducting expense reimbursements owed to SAM.[5]

28. Set forth below is a description of the work performed by SAM in connection with each of the Settlements and the calculation of the fees for each of the Settlements.

AF Settlement

29. The Trustee achieved a settlement with AF via an extended mediation in which she was represented by SAM. The assertion of claims against AF was the culmination of an extensive investigation performed by SAM which included, <u>inter</u> <u>alia</u>, (a) conducting Bankruptcy Rule 2004 examinations (including two days of examination of AF's managing partner), (b) reviewing thousands of pages of documents, (c) reviewing voluminous Court records, (d) performing fact and legal research, and (e) interviewing individuals associated with the Debtors.

30. AF and the Trustee agreed to enter into mediation. SAM prepared a mediation statement and other correspondence, reviewed AF's mediation statement, participated in two in-person days of judicially-supervised mediation, and had follow up communications with the mediatory, all of which resulted in the settlement.

31. SAM prepared the settlement stipulation for the AF Settlement and also prepared a detailed Bankruptcy Rule 9019 motion. A hearing was held on April 26, 2016, at which SAM attended. The AF Settlement was approved and an order was entered. Notably, there were no objections to the AF Settlement.

---

[5] While SAM is entitled to a percentage recovery of claims reductions, not to exceed 33 1/3%, in an amount to be negotiated in good faith between SAM and the Trustee [Dkt. No. 786], and such claims reductions were achieved here, after consultation with the Trustee, SAM has determined not to seek compensation on account of such claims waivers.

9

32. The financial features of the AF Settlement provide for (a) a stream of payments totaling $220,000.00 over the course of twenty months and (b) a judgment against AF in the amount of $300,000 (less amounts paid) in the event of an uncured default in payment by AF or more than three untimely payments. In addition, AF waived the right to seek payment of fees (represented to be at least $360,000.00) that were outstanding.

33. SAM calculates its contingency fee at 33 1/3% of $220,000.00 (or 33 1/3% of $300,000.00 in the event the Trustee obtains a judgment in that amount as described above), subject to the Trustee's receipt of the settlement proceeds and after deducting SAM's expenses from all of the proceeds of the Settlements (as further explained below). After consultation with the Trustee, SAM has determined not to seek a contingency fee on any portion of the AF claims waiver.

NP Settlement

34. The Trustee achieved a settlement with NP in which she was represented by SAM. NP served post-petition as the Debtors' special labor and conflicts counsel. The Trustee raised with NP issues relating to the payment of the $100,000.00 retainer after the involuntary bankruptcy petition had been filed against PHC, the source of the funds for the retainer along with the intended use of the retainer for the benefit of both Debtors, the disclosures in NP's retention application, and NP's representation of the Debtors in this case. In connection with these issues, SAM reviewed numerous documents (including documents produced by NP), conducted legal research and obtained tolling agreements. SAM led negotiations with NP which included an in-person meeting attended by the Trustee and NP, and numerous follow-up communications.

35. A settlement with NP was reached. SAM prepared the stipulation and also prepared a detailed Bankruptcy Rule 9019 motion and related filings. A hearing was held on August 25, 2015, at which the NP Settlement was approved, and an order was entered that day. There were no objections to the NP Settlement.

36. The NP Settlement was for $100,000.00 and the funds have been received by the Trustee. In addition, NP waived the right to seek repayment of in excess of $100,000.00 in fees it incurred that were outstanding.

37. SAM calculates its contingency fee on the NP Settlement at 33 1/3% of $100,000.00, after deducting SAM's expenses from all of the proceeds of the Settlements (as further explained below). After consultation with the Trustee, SAM has determined not to seek a contingency fee on any portion of the NP claims waiver.

<u>Foley Settlement</u>

38. The Trustee achieved a settlement with Foley in which she was represented by SAM. Foley was counsel to the Debtors and to an entity with which PHC had an affiliation agreement, MediSys Health Network, Inc. The Trustee raised issues relating to the termination of the relationship between PHC and MediSys Health Network and approximately $75,000.00 in transfers made to Foley by PHC before the involuntary petition was filed against PHC. In connection with these issues, SAM reviewed numerous documents and conducted Bankruptcy Rule 2004 examinations of MediSys and PHC executives. SAM twice met in person with representatives of Foley and had numerous subsequent communications and settlement negotiations regarding the issues raised by the Trustee. SAM also obtained tolling agreements with Foley.

39. A settlement with Foley was reached. SAM prepared the stipulation and also prepared a Bankruptcy Rule 9019 motion. A hearing was held on April 26, 2016, at which the Foley Settlement was approved, and an order was entered that day. There were no objections to the Foley Settlement.

40. The Foley Settlement was for $100,000.00 and the funds have not yet been received by the Trustee. SAM seeks payment of its Fee Request relating to the Foley Settlement only as and when payments are made by Foley to the Trustee.

41. SAM calculates its contingency fee on the Foley Settlement at 33 1/3% of $100,000.00, after deducting SAM's expenses from all of the proceeds of the Settlements (as further explained below).

LI Script Settlement

42. The Trustee achieved a settlement with LI Script in which she was represented by SAM. The Trustee raised issues concerning post-petition transfers made to LI Script. In connection with these issues, SAM reviewed numerous documents. SAM also filed a complaint seeking recovery of over $80,000.00 in post-petition transfers and disallowance of LI Script's claims against the PHC estate. Thereafter, SAM conducted settlement negotiations with LI Script through its counsel.

43. A settlement with LI Script was reached. SAM prepared the stipulation and also prepared a detailed Bankruptcy Rule 9019 motion and related filings. There were no objections to the LI Script Settlement, and the Court entered an order on presentment on December 18, 2015.

44. The LI Script Settlement was for $25,000.00 and the funds have been received by the Trustee.

45. SAM calculates its contingency fee on the LI Script Settlement at 33 1/3% of $25,000, after deducting SAM's expenses from all of the proceeds of the Settlements (as further explained below).

Calculation of Fee Request

46. As discussed above, SAM's contingency fee is calculated as follows:

| | |
|---|---|
| AF Settlement | $220,000.00 |
| NP Settlement | $100,000.00 |
| Foley Settlement | $100,000.00 |
| LI Script Settlement | $25,000.00 |
| Total | $445,000.00 |
| Expenses | ($1,385.46) |
| Net Total | $443,614.54 |
| 33 1/3% | $147,871.51 |

47. Although SAM's compensation for these Settlements is contingency-based and not based on hours incurred, SAM nevertheless maintains written records of time spent by attorneys and paraprofessionals performing legal services on behalf of the Trustee. Such time records are generally made contemporaneously with the rendering of services by the person rendering such services and in the ordinary course of the SAM's practice. The records reflect the name of the attorney or paraprofessional, the date on which the services were performed, the services rendered and the amount of time spent performing the services. Copies of SAM's time records are annexed as **Exhibit "B"**.[6] Included in SAM's time records is a list of the attorneys and paraprofessionals who worked on these cases, the aggregate time spent, current hourly billing rates and the value of the total time expended. The Trustee has reviewed these time records.

---

[6] Time records previously filed with the Court are incorporated herein, but are not annexed. The time records annexed to this Application are limited to the period from January 16, 2015 through April 27, 2016. Work performed in connection with these Settlements is not limited to the annexed time records.

13

## REIMBURSEMENT OF EXPENSES

48. It is respectfully submitted that the Court should also allow SAM reimbursement for its expenses in the amounts of $1,385.46 as set forth on **Exhibit "C"**, consisting of expenses incurred in connection with the investigations and Settlements. See In re Poseidon Pools, 216 B.R. at 101 ("Bankruptcy Courts . . . often allow reimbursement of expenses.").

49. The charges for which SAM seeks reimbursement are not included in SAM's overhead and none of the charges for which SAM seeks reimbursement are being charged above cost to SAM. Accordingly, allowing such reimbursement will not result in an "estate [being] unnecessarily burdened, and a law firm undeservedly benefitted." See In re Croton River Club, 162 B.R. 656, 662 (Bankr. S.D.N.Y. 1993). Rather, SAM is asking only to be reimbursed for the actual out-of-pocket expenses incurred in its representation of the Trustee with respect to administration of these bankruptcy cases.

## NOTICE

50. SAM respectfully requests that the Court approve as adequate and appropriate notice service of the Notice of Hearing for this Application on: (a) the Office of the United States Trustee; (b) the Official Committee of Unsecured Creditors, through counsel; (c) 1199 SEIU National Benefit Fund for Health and Human Service Employees, through counsel; (d) 1199 SEIU United Healthcare Workers East, through counsel; (e) the Office of the New York State Attorney General; (f) all parties who filed a notice of appearance; and (g) the parties listed on the core service list maintained by The Garden City Group LLC.

51. Bankruptcy Rule 2002(a) requires notice on all creditors by mail of a "hearing on any entity's request for compensation or reimbursement of expenses if the request exceeds $1,000." FED. R. BANKR. P. 2002(a). In these cases, there are well over 1,000 creditors

(including former employees) and interested parties, and service on all those entities would be expensive.

52.     Accordingly, under the circumstances of these cases, SAM submits the proposed notice on those creditors and interested parties identified above is adequate.

## **CONCLUSION**

53.     SAM submits that the services it performed in connection with the Settlements were comprehensive and resulted in substantial and tangible benefits to the estates, and the award requested herein is warranted.

54.     No agreement or understanding exists between SAM and any other person for the sharing of compensation received for services rendered in connection with the representation of the Trustee.

55.     No division of compensation will be made by SAM and no action prohibited by Bankruptcy Code § 504 has been made or will be made by SAM.

56.     Except as set forth above, no prior application has been made to this or any other Court for the relief requested herein.

**WHEREFORE,** SAM respectfully requests entry of an order:

(a) awarding $147,871.51 as interim compensation for SAM's services rendered in connection with the Settlements with payment to be made and contingent upon collection by the Trustee of the Settlement proceeds;

(b) allowing reimbursement of the SAM's expenses in the amount of $1,385.46;

(c) authorizing payment of such compensation; and

(d) granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
May 6, 2016

                                      **STORCH AMINI & MUNVES PC**
*Special Counsel to Lori Lapin Jones, as Chapter 11 Trustee*

By: /s/ Avery Samet
     Bijan Amini, Esq.
     Avery Samet, Esq.
     Jaime Leggett, Esq.
2 Grand Central Tower, 25th Floor
140 East 45th Street
New York, New York 10017
Telephone: (212) 490-4100